UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DOUGLAS EVERY,

                                Petitioner,

    v.                                                            9:18-CV-1126
                                                                         (BKS/ATB)

HAROLD GRAHAM, Superintendent

                                Respondent.

---

BRIAN SHIFFRIN, ESQ., for Petitioner
PRISCILLA I. STEWARD, AAG, for Respondent

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

Petitioner, incarcerated at Auburn Correctional Facility, filed this petition pursuant to 28 U.S.C. § 2254, challenging a January 30, 2015 judgment of conviction after a Tioga County Court jury found him guilty of manslaughter in the first degree. (Dkt. No. 1, Petition ("Pet.") at 1-2). Petitioner was sentenced to seventeen years of imprisonment, followed by five years of post-release supervision. (Dkt. No. 8, State Court Record ("SR") at 698). The Appellate Division considered petitioner's direct appeal,[1] and, with one Justice dissenting, affirmed petitioner's conviction on January 19, 2017. *People v. Every*, 146 A.D.3d 1157 (3d Dep't 2017). Petitioner moved the Third Department for leave to appeal to the New York Court of Appeals, and on March

---

[1] Petitioner was represented by new counsel on his direct appeal.

30, 2017, dissenting Justice Aarons granted petitioner's leave application. (SR at 969). On September 5, 2017, the Court of Appeals unanimously affirmed the Appellate Division decision. *People v. Every,* 29 N.Y.3d 1103 (2017) (SR at 995-96).

In his federal habeas corpus application filed on September 19, 2018, petitioner seeks relief based on his "unlawful detention caused by the denial of his right of effective assistance of trial counsel as guaranteed by the Constitution of the United States." (Pet. ¶ 12). Respondent filed an answer to the petition, together with the pertinent state court records and a memorandum of law. (Dkt. Nos. 7, 8). Petitioner filed a reply. (Dkt. No. 9). For the following reasons, this court agrees with respondent and will recommend denial of the petition.

## DISCUSSION

**I.     Relevant Facts**

Petitioner's conviction stemmed from an incident that occurred on October 23, 2013, wherein petitioner fatally stabbed Milton Jump. As relevant background, in the summer of 2013 Jump and his 85-year-old cousin, James Atwell, moved into petitioner's home, where they paid rent. (Atwell: Trial Transcript ("T.") 752-53). Jump was Atwell's caretaker. (Atwell: T. 753).

According to Atwell, on October 23, 2013, Jump spent the day working in the garage, coming inside at times to check on Atwell. (Atwell: T. 759). Petitioner returned home from work at about 5:00 p.m., at which time he "started drinking" and working on his computer. (Atwell: T. 760-61). Jump came inside at approximately 7:00 or 8:00 p.m. to prepare Atwell's dinner. (Atwell T. 759-60). Soon after, Jump and

petitioner began to argue about Jump's bedroom. (Atwell: T. 762). From his wheelchair,[2] Atwell could see petitioner and Jump arguing, and the argument became physical – Atwell observed petitioner and Jump pushing each other and heard Jump say "get off me." (Atwell: T. 764-65). Petitioner eventually went outside and turned off the power to the house. (Atwell: T. 766-67). Atwell was left in the house, in the dark, with Jump. (*Id.*). The power came back on within five to ten minutes, and petitioner returned inside. (Atwell: T. 768). At that point, Jump was standing in the kitchen, next to the refrigerator. (Atwell: T. 769). Petitioner walked into the kitchen and picked up a knife off the counter that Jump had been using to cut vegetables. (Atwell: T. 769-71). Jump held nothing in his hands, which were down at his sides. (Atwell: T. 772). Petitioner told Jump that he could "do anything and go anywhere I want to," to which Jump did not respond. (*Id.*). Then, petitioner lunged at Jump with the knife and stabbed him. (Atwell: T. 773-75, 797). Jump immediately fell to the floor, where he lay unresponsive. (Atwell: T. 774-76).

Although petitioner did not testify on his own behalf, his approximately hour-and-a-half long recorded police interview was admitted as evidence at trial. (SR 871-930; T. 663-64). During his interview, petitioner admitted that he and Jump were arguing that evening, and the argument became physical. (SR 875, 879, 888). According to the petitioner, he was "thrown around the room" by Jump; pushed to the ground and against the woodstove. (SR 875-76, 879, 908). The physical altercation

---

[2]Atwell experienced physical limitations, including difficulty speaking and an inability to stand, as a result of previously suffering three strokes. (Atwell: T. 749-50). He used a power wheelchair in order to navigate independently. (*Id.*).

3

escalated until petitioner ran out of the house and attempted to call 911. (SR 876-77). The 911 call did not go through, however, because Jump had shut off the power to the house. (SR 876-77).³ Petitioner returned inside the house and switched the main power back on. (SR 886-87). Jump was in the living room, screaming at petitioner and attempting to "come at him." (SR 881-83, 887). Petitioner picked up a knife from the kitchen counter and backed into the laundry room, because "he didn't [want] to get beat up anymore." (SR 882-83, 912). Jump then lunged at petitioner,⁴ impaling himself on the knife that petitioner was holding. (SR 893-94, 896). Petitioner never let go of the knife, but pulled it out of Jump. (SR 894). Jump then ran into the kitchen and fell to the floor. (SR 898). Petitioner put a towel under Jump and a cold compress on his head, and he immediately called 911 to request an ambulance. (SR 891-92). During his interview with the police, petitioner maintained that he was never going to stab Jump with the knife, but was merely wielding the weapon to keep Jump away from him. (SR 897). Petitioner did not dispute that Jump was not holding anything in his hands.

After hearing all of the evidence, the jury convicted petitioner of manslaughter in the first degree.

---

³According to petitioner's statement, he used a signal "booster" at his home in order to make cell phone calls, in light of the poor cellular reception. (SR 877). Allegedly, when the power to the house was turned off, it also shut down the signal booster, preventing petitioner from getting through to 911. (SR 876-877).

⁴Petitioner claimed that Jump said something confrontational immediately prior to lunging at him, but could not remember the exact words that Jump used. (SR 915).

4

## II. Generally Applicable Law

### A. Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

The AEDPA provides that, when a state court has adjudicated the merits of a petitioner's constitutional claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008). This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

To determine whether a state-court decision is contrary to clearly established Supreme Court precedent, the federal court must consider whether the state court decision "'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Id*. at 182 (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)) (alterations in original). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

5

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo*. *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001). Finally, the Supreme Court has held that circuit and district court decisions do not constitute "clearly established Federal Law, as determined by the Supreme Court." *Parker v. Matthews*, 567 U.S. 37, 132 S. Ct. 2148, 2155 (2012). Instead, circuit court decisions may illustrate the "possibility" of fairminded disagreement, sufficient to justify denying the writ. *White v. Woodall*, 572 U.S. 415, 422 n.3 (2014).

## III.  Ineffective Assistance of Trial Counsel

### A.  Legal Standards

The relevant federal law governing ineffective assistance of counsel claims was set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). To succeed on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland*. First, the defendant must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth amendment." *Hudson v. New York,* No. 07-CV-1327, 2007 WL 3231970, at *2–3 (E.D.N.Y. Oct. 30, 2007) (citing *Strickland v. Washington,* 466 U.S. at 687). Under this prong, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington,* 466 U.S. at 689 (internal quotation marks and citations omitted).

Second, the defendant must satisfy the prejudice prong set forth in *Strickland* by showing that any deficiencies in counsel's performance actually prejudiced the defendant. *Id.* at 692–93. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination whether the specific errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 694.

Upon review of an habeas petition claiming ineffective assistance of counsel, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction[.]" *Paige v. Lee*, 99 F. Supp. 3d 340, 345 (E.D.N.Y. 2015) (quoting *Harrington v. Richter,* 562 U.S. 86 (2011)). Therefore, to the extent a habeas petitioner must show both that counsel's performance was unreasonable and that the state court's decision to the contrary was unreasonable, a

7

"doubly deferential" standard of judicial review applies to ineffective assistance of counsel claims analyzed under 28 U.S.C. § 2254(d)(1). *Santana v. Capra*, 284 F. Supp. 3d 525, 538 (S.D.N.Y. 2018) (citing *Knowles v. Mirzayance,* 556 U.S. 111 (2009)).

### B. Application

Petitioner raises three categories of ineffective assistance on the part of his trial counsel, adopting the Appellate Division's dissenting opinion that the alleged deficiencies "essentially nullified defendant's justification defense and removed the focus of the case away from defendant's alleged justified acts and towards a nonexistent duty to retreat." (Petitioner's Brief ("Pet.'s Br.") at 31). Specifically, petitioner argues that he was denied effective assistance by counsel's failure to:

(1) Object to evidence and opening/closing statements by the prosecutor regarding petitioner's ability to retreat relative to his justification defense;

(2) Object to testimony that Jump's death was a homicide; and

(3) Object to the prosecutor denigrating petitioner's defense and vouching for the credibility of a prosecution witness during summation.

(Pet. at ¶12). Respondent argues that petitioner is not entitled to habeas relief, because "the Court of Appeals reasonably applied clearly established Supreme Court law in denying his claim that trial counsel was ineffective." (Respondent's Brief ("Resp. Br.") at 2). This court will address each argument in turn.

### 1. Petitioner's Justification Defense

Petitioner argues that his trial counsel provided ineffective assistance when he failed to object to certain evidence regarding petitioner's ability to retreat. Specifically, petitioner contests the admission of his video recorded statement into evidence, which

8

"contained over twenty instances of [the police] questioning petitioner about his ability to retreat from the encounter." (Pet. Br. at 23-24). Petitioner claims this error was compounded by the prosecutor's un-objected to, direct examination of Investigators Moulton and Nalepa, which "explicitly presupposed [that petitioner] had a duty to retreat." (*Id.* at 26-27). Furthermore, petitioner claims ineffective assistance to the extent that counsel did not object to the prosecutor's comments regarding petitioner's ability to retreat during his opening and closing statements. (*Id.* at 23, 27-28). Respondent counters that the trial evidence and opening/closing statements were properly received at trial, as counsel had no basis to object and petitioner was not prejudiced by counsel's inaction. (Resp. Br. at 26).

Petitioner raised the defense of justification at trial, and it was the prosecutor's burden to prove that petitioner was not justified in stabbing Jump. As it pertained to the petitioner's defense, a person may not use deadly physical force upon another person unless:

> (a) The actor reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he or she knows that with complete personal safety, to oneself and others he or she may avoid the necessity of so doing by retreating; except that the actor is under no duty to retreat if he or she is:
>
> (i) in his or her dwelling *and* not the initial aggressor [. . .]

NY Penal Law § 35.15(2)(a)(i) (emphasis added). At trial, there was no factual dispute that petitioner stabbed Jump in petitioner's "dwelling." Petitioner appears to argue that this undisputed fact immunized him from any duty to retreat, rendering objectionable

9

any reference that such a duty may have existed.

Notwithstanding petitioner's argument, the disputed evidence and statements were properly considered by the jury. Contrary to the petitioner's insistence, the jury could have reasonably concluded that petitioner had a duty to retreat. As previously set forth, a limitation on the use of deadly physical force is that such force must not be used if the actor knows that he or she can retreat in complete safety, unless the actor is both in his dwelling and not the initial aggressor. *See People v. Collice,* 41 N.Y.2d 906 (1977). "If mere physical force is employed against a defendant, and the defendant responds by employing deadly physical force, the term initial aggressor is properly defined as the first person in the encounter to use deadly physical force." *People v. Brown,* 33 N.Y.3d 316 (2019) (internal quotations omitted)(quoting *People v. McWilliams,* 48 A.D.3d 1266, 1267 (4th Dep't 2008)). Here, the trial evidence certainly established, at a minimum, a question of fact as to whether petitioner was the initial aggressor upon wielding the knife. Accordingly, it was the province of the jury to determine whether petitioner was the initial aggressor, and a finding in the affirmative would have negated any exception to his duty to retreat.

Furthermore, as the Appellate Division set forth in its majority opinion, evidence that petitioner had alternatives to the use of deadly physical force was relevant on the question of whether he reasonably believed that he was in imminent danger of deadly physical force, and that the nature and extent of the force used to meet that danger was reasonable under the circumstances. *Every,* 146 A.D.3d 1164 (citing *People v. Emick,* 103 A.D.2d 643, 658 (1984) (evidence of alternatives to deadly physical force was

admissible on the issue of reasonableness of defendant's perceptions and not to the question of whether defendant was obligated to retreat)). To the extent that the prosecutor's evidence and opening/closing statements were properly submitted to the jury on the issue of defendant's perceptions, the state courts did not unreasonably conclude that counsel's "failure" to object to the same was not ineffective assistance. *See Harrington v. Richter,* 562 U.S. 86, 101 (2011) ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.").

This court also finds no merit to petitioner's assertion that he received ineffective assistance when counsel failed to object to the portion of the trial court's justification instruction that addressed the definition of a "dwelling." Specifically, petitioner contends that the court erred by including a portion of the pattern jury instruction stating that "whether a particular location is part of a [d]efendant's dwelling depends on the extent to which the [d]efendant and persons actually sharing living quarters with the [d]efendant exercise[] exclusive possession and control over the area in question." (Pet. Br. at 28). Defendant maintains that providing this instruction to the jury invited an improper and confusing factual determination for the jury as to the "dwelling" element of petitioner's justification defense. (Pet.'s Br. at 29-30). However, this court is not so convinced, as the likelihood of any confusion regarding the issue of petitioner's dwelling was minimal. The trial testimony was unequivocal that petitioner owned the home wherein he stabbed Jump, and "the evidence and arguments pertaining to alternatives available to defendant other than stabbing the victim were addressed to whether defendant was the [initial] aggressor and whether his actions and perceptions

were reasonable." *Every,* 146 A.D. at 1165.  In other words, there was no inference throughout the trial suggesting to the jury that the stabbing took place anywhere other than petitioner's dwelling, despite the court's open ended instruction.  On the other hand, the undisputed proof that Jump never had, or threatened to use, a weapon was overwhelming in the face of petitioner's assertion that he was justified in using deadly physical force.  Therefore, even assuming that trial counsel's failure to object to this instruction was deficient, it did not result in prejudice to the petitioner and would not give rise to ineffective assistance of counsel under *Strickland.  See United States v. Chin,* 224 F.3d 121, 125 (2d Cir. 2000) (counsel's performance not constitutionally ineffective where the court was "not convinced that but for counsel's alleged errors the result of the proceeding would have been different.").

### 2. "Homicide" Testimony

Petitioner claims that counsel should have objected to testimony by the medical examiner and the coroner characterizing Jump's death as a homicide.  (Pet. Br. at 31-33).  Without question, the admission of these witness's opinion's regarding the cause of death was improper. Under New York law, medical testimony characterizing a victim's death as a homicide improperly invades the province of the jury.  *See People v. Odell,* 26 A.D.3d 527, 529 (3d Dep't 2006).  Nevertheless, counsel's failure to object did not constitute ineffective assistance under *Strickland,* because petitioner did not suffer any prejudice as a result of the testimony.

Petitioner's defense strategy at trial was that he was justified for stabbing Jump in self-defense.  Petitioner never disputed the fact that he stabbed Jump, or that the stab

wound was the cause of death. Thus, failing to object to the characterization of Jump's death as a homicide[5] was harmless error, to the extent that there was no question as to this issue. *Broadnax v. Conway,* No. 11-CV-21 (MAD/CFH), 2012 U.S. Dist. LEXIS 187859, at *33-35 (N.D.N.Y. Sept. 17, 2012), Report Recommendation Adopted, 2013 WL 1775693 (N.D.N.Y. Apr. 25, 2013); *People v. Lluveres,* 15 A.D.3d 848, 849 (4th Dep't 2005).

Furthermore, petitioner has not rebutted "the strong presumption" that counsel's attention to certain issues to the exclusion of others reflected trial tactics rather than "sheer negligence." *Vassar v. Artus,* No. 9:08-CV-0041(DNH), 2016 WL 3632712, at *9 (N.D.N.Y. June 29, 2016) (citing *Richter,* 562 U.S. at 109) (other citations omitted)); *United States v. Cohen*, 427 F.3d 164, 170-71 (2d Cir. 2005) ("[D]ecisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so."). Here, trial counsel may very well have chosen not to object to this testimony so as not to highlight the unfavorable, yet undisputed, fact that Jump was killed by petitioner. *See Garvin v. Artist*, No. 08 Civ. 5285, 2011 WL 6826329, at *13 (S.D.N.Y. Dec. 8, 2011) (finding trial counsel may have reasonably determined that another objection in front of the jury would "only have served to highlight the unfavorable nature of the evidence."); *Taylor v. Fischer,* No. 05-CV-3034, 2006 WL 416372, at *5 (S.D.N.Y. Feb. 21, 2006) ("The Court of Appeals identified several strategic considerations that could have led a reasonable lawyer to forgo objections . . .

---

[5] Black's defines homicide as "the killing of one person by another." Homicide Definition, *Black's Law Dictionary* (11th ed. 2019), *available* at Westlaw.

13

[including] the desire not to call attention to unfavorable evidence or to highlight unfavorable inferences."). As such, the Court of Appeals did not unreasonably apply *Strickland* in denying petitioner's ineffective assistance of counsel claim on this basis. *People v. Every,* 29 N.Y.3d at 1104.

### 3. Prosecutorial Conduct

Last, petitioner argues that he was denied effective assistance by counsel's failure to object to the prosecutor denigrating his defense and vouching for the credibility of a prosecution witness during summation. The contested comments are as follows: (1) that petitioner's statement was "a story to sell the world, just like he sells houses," (2) that petitioner's only consistent argument was "to minimize his behavior, claim he is old and weak and that everything is all [Jump's] fault, always, all the time," (3) reference to petitioner's "self serving attempt to paint [Jump] in a bad light and to somehow justify what he did, (4) that the petitioner "was trying to manipulate the story and make himself look like the victim," and (5) that petitioner "minimized his responsibility to whoever would listen." (Pet. Br. at 33-34).

The prosecution's comments do not rise to the level of impropriety that would warrant habeas relief. [A] prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." *Franza v. Stinson,* 58 F. Supp. 2d 124, 149 (S.D.N.Y. July 1, 1999) (citing *United States v. Jaswal,* 47 F.3d 539, 544 (2d Cir. 1995)). "The prosecutor's job on summation is to summarize the evidence presented at trial in the most persuasive way possible." *Id.* "Comments and questions by a

prosecutor, even if "undesirable" or "universally condemned," do not amount to constitutional error warranting habeas relief unless they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Williams v. Conway,* No. 08-CV-0359, 2010 WL 3660049, at *7 (W.D.N.Y. Sept. 14, 2010) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks and citations omitted)).

Here, the prosecutor was entitled to address the credibility, or lack thereof, of petitioner's account of the events, given their burden to disprove petitioner's justification defense. This court has read the defense summation and the prosecution summation, finding that the prosecutor's challenged comments were responsive to the defense's summation or a fair summary of and comment on the trial evidence. *See Osorio v. Conway*, 496 F. Supp. 2d 285, 301 (S.D.N.Y. July 17, 2007) (statements made "during summation are permissible if they constitute a fair comment on the evidence at trial and reasonable inference therefrom, or a fair response to remarks made by the defense counsel during summation.") (citation and internal quotation marks omitted)). Accordingly, none of the challenged remarks rise to the level necessary to qualify for habeas relief. *See Williams v. Conway,* 2010 WL 3660049 at *9 (no constitutional violation where prosecutor utilized terms such as "lies," "fiction," "fabrication," and "Disneyworld" to characterize defendant's alibi theory).

Nor was the prosecution's comments regarding Atwell's credibility grounds for an objection by counsel. A prosecutor may not vouch for the testimony of government witnesses, because it could cause jurors to trust the government's assessment of the

15

evidence rather than their own. *See U.S. v. Restrepo,* 547 Fed. App'x 34 (2d Cir. 2013) (citing *United States v. Williams,* 690 F.3d 70, 75 (2d Cir. 2012)). The prosecution is permitted to vigorously argue for the jury to find its witnesses credible, as long as it does not link its own credibility to that of the witness, or imply the existence of extraneous proof supporting the witnesses credibility. *See U.S. v. Arias-Javier,* 392 Fed. App'x 896, 898 (2d Cir. 2010)(other citations omitted). Neither occurred here.

The Appellate Division properly determined that the statement at issue – "Mr. Atwell may be hard to understand, but he has no reason to come into this courtroom and not tell the truth or exaggerate. None. He was sincere and sure of himself about the things that matter." – was a fair response to suggestions in the defense's summation that Atwell's testimony was inconsistent and incredible. *People v. Every,* 146 A.D.3d at 1164. "When the defense counsel have attacked . . . the credibility of the government [witnesses], the prosecutor is entitled to reply with rebutting language suitable to the occasion." *U.S. v. Arias-Javier*, 392 Fed. App'x at 898 (other citations omitted). When viewed in context, the challenged remark was not the prosecutor's personal belief conveyed to the jury, but, rather, a "conclusion that he urged the jury to draw from the totality of the evidence." *Id.* Indeed, the prosecutor proceeded to support his statement with reference to how Atwell's testimony aligned with the physical evidence. (T. 1055-56). Accordingly, the state courts did not unreasonably apply *Strickland* in rejecting petitioner's claim for ineffective assistance of counsel on this basis, and petitioner does not meet the threshold for succeeding on his habeas petition in this regard.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: October 21, 2019

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge